**Clyde MARTINEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–332–CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 14, 1982.

Charles Manning, Beeville, for appellant.

C.F. Moore, Jr., Asst. Dist. Atty., Beeville, Thomas L. Bridges, Sinton, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

Appellant was indicted for murder and convicted by a jury of voluntary manslaughter. After the trial court assessed punishment at twelve years confinement and denied a motion for new trial, appellant perfected this appeal.

At trial, the prosecution introduced into evidence against the appellant's objection a written statement which appellant signed the night of the killing. Appellant now claims the trial court erred in failing to suppress this written confession. He maintains that the law enforcement officer who

interrogated the appellant failed to honor his right to have an attorney present at questioning, and the appellant did not "knowingly, intelligently, and voluntarily waive that right." Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It is undisputed that the appellant requested an attorney when he was first informed of his rights after arriving at the Live Oak County sheriff's office. It is also clear that the appellant later signed a confession, after talking to an attorney by telephone, but without seeing one in person or having representation during the interrogation.

*Miranda,* supra, of course, requires us to review the facts surrounding the interrogation:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723.

■ *Miranda* does not bar law enforcement officials from forever interrogating a detainee once counsel has been requested, because it is entirely possible for an individual to simply change his mind. See *McKittrick v. State,* 541 S.W.2d 177, 183 (Tex.Cr. App.1976). However, because the officers questioned the appellant without an attorney present after he had invoked his right, the State had the heavy burden of demonstrating at the suppression hearing that the appellant knowingly, intelligently and voluntarily waived his right to remain silent and to assistance of counsel. *Miranda v. Arizona,* supra; *Stone v. State,* 612 S.W.2d 542 (Tex.Cr.App.1981); *Ochoa v. State,* 573 S.W.2d 796 (Tex.Cr.App.1978); *McKittrick v. State,* supra.

■ In determining whether appellant made an intelligent and voluntary waiver of his right to counsel, we must look at the totality of the circumstances. *Stone v. State,* supra; *Brown v. State,* 508 S.W.2d 91 (Tex.Cr.App.1974). Evidence concerning the background, experience and conduct of the accused is important and should be considered. *McKittrick v. State,* supra.

The testimony shows that the officers present when appellant asked for an attorney stopped the interview immediately and began efforts to contact an attorney. It also shows that after twenty minutes of unsuccessful phone calls to area lawyers, a Texas Ranger began anew the interview. The evidence is not clear whether the renewed conversation was initiated by the Texas Ranger or the appellant.

According to the Ranger, a few minutes after he began to take appellant's statement, the Honorable Dwayne McWilliams, an attorney who was contacted in person by a highway patrolman at the Ranger's request, telephoned to speak to the appellant. McWilliams also spoke directly with the Texas Ranger, informing him of his advice he gave the appellant. At the pre-trial hearing, the Ranger admitted he was under the impression that McWilliams was speaking as an advocate for the appellant, but that he did not feel that limited him in his "attempt to talk with the client." The Ranger also admitted that, after talking to McWilliams, he went right on asking questions of the appellant.

■ The only evidence in the record that the appellant knowingly waived his rights consists of the facts that he voluntarily answered the Ranger's questions and signed the statement as prepared which included pre-printed averments indicating that the signer understood his rights and freely waived them. Such evidence is significant, but is not determinative of the question of affirmative waiver. See: *McKittrick v. State,* supra.

There is no evidence that the appellant affirmatively volunteered a desire to speak with the police or specifically disavowed the

desire to have an attorney present. *Cf. Furtick v. State,* 592 S.W.2d 616 (Tex.Cr. App.1980); *United States v. Monti,* 557 F.2d 899 (1st Cir.1977).

At the suppression hearing, the appellant, when asked about the advice of McWilliams, responded:

> "Well, he recommended not to sign anything unless I had an attorney present. And since I didn't contact Mr. Schneider or Mr. Gonzales out of Sinton (other attorneys), I didn't know what else to do but go ahead and sign that until Sheriff Sam Huff came in there and said, 'Clyde, you've got nothing to hide.' So I went ahead and signed."

and, later:

> "I told him that I was going to sign it because I had nothing to hide, and I had no money for an attorney."

Appellant's statements indicate uncertainty about his understanding that he had the right to a lawyer's advice and presence during any police interrogation, whether or not he could locate one or afford to pay one himself.

■■ Examining all the circumstances, we cannot say the evidence is sufficient to show that the appellant knowingly and intelligently waived his right to counsel. Nevertheless, the State argues that the statement was admissible because it was voluntary, but the appellant's own admission. However, the law is clear that to meet constitutional standards, a confession must be both voluntary and taken in compliance with *Miranda.* If one requirement is met, but not the other, it is still inadmissible. *Ochoa v. State, supra,* at 801. The trial court erred in failing to suppress the written statement.

Now, we must determine if the error was harmful. See *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979), cert. denied, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Other than the appellant, no eyewitness testified at the trial. Appellant admitted his guilt, but raised the issue of self-defense. The written confession did not include a recitation of threats by the deceased to which the appellant testified at trial. Appellant's testimony suggests that the deceased may have acted in a threatening manner, a fact not conveyed in the statement that was admitted into evidence. Appellant took issue with the "statement," insofar as it recited that the appellant was unable to understand what the deceased was saying to him prior to the shooting. It appears to us that the statement tended to undermine the appellant's defense.

We have reviewed the record and are unable to place this case among that class of cases in which the evidence of guilt is so overwhelming as to render the error in the admission of the confession harmless beyond a reasonable doubt.[1]

Accordingly, the judgment of the trial court is reversed and the cause remanded.

---

1. While we agree with the argument for the application of the doctrine of curative admissibility made by Justice Douglas (and joined by two other judges) in his dissent in *Ochoa v. State, supra,* as an intermediate appellate court, we are required to follow the decisions of our highest court, the Court of Criminal Appeals.